UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER MURNANE,<br><br>  Plaintiff,<br><br>v.<br><br>CAROLYN COLVIN,<br>Acting Commissioner of Social Security,<br><br>  Defendant. | Civ. No. 15-7704 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Christopher Murnane brings this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental social security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83(f). For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is AFFIRMED.

I.  BACKGROUND

Murnane, now 23 years old, graduated from high school, where he took a mix of special and general education classes. He has a seizure disorder that he controls with medication. Murnane has been seasonally employed as a concrete mixer and as a worker in a Toys "R" Us warehouse. He applied for SSI benefits on March 20, 2012. His application was initially denied on June 21, 2012, and then on reconsideration on December 6, 2012. On May 30, 2014, following a hearing at which Murnane testified and was represented by counsel, ALJ Joel Friedman found that Murnane was not under a disability as defined in the Social Security Act from any time from March 20, 2012 through the date of the decision. On August 27, 2015, the Appeals Council denied his

1

request for review, rendering the ALJ's decision the final decision of the Commissioner. Murnane now appeals that decision.

## II. DISCUSSION

To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. He must also show that he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. *Id.* at § 1382c(a)(3)(A).

### A. Standard of Review

This Court exercises a plenary review of all legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). This Court adheres to the ALJ's findings so long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record substantial evidence which, on the whole, establishes that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221-222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see also Bantleon v. Comm'r of Soc. Sec.*, 2010 WL 2802266, at *13 (D.N.J. July 15, 2010). Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "'explicitly' weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

**B.    The Five Step Analysis**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920.

Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulations.

**Step one:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step five:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

### C. The ALJ's Decision

The ALJ determined that Murnane was not under a disability, as defined in the Social Security Act at any time since March 20, 2012, the date on which he filed his application. The ALJ's specific step-wise findings may be summarized as follows.

At step one, ALJ Friedman found that Murnane had not engaged in substantial gainful employment since March 2012. (R. 21)[1]

At step two, the ALJ identified "seizure disorder" and "learning disorder" as severe impairments. (*Id.*)

At step three, the ALJ determined that Murnane's impairments did not meet or medically equal the severity of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A §§ 11.03 (epilepsy) or 12.05 (intellectual disorder).[2] (R. 22-23)

Before moving to step four, ALJ Friedman determined that Murnane's medically determinable impairments could reasonably be expected to cause his alleged symptoms but that his statements concerning their intensity, persistence, and limiting effects were not entirely credible in light of all the evidence in the record. The ALJ determined Murnane's residual functional capacity ("RFC") thus:

> **4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple routine jobs involving one-to-two step instruction in a low contact setting, requiring no contact with the general public and occasional contact with supervisors and coworkers. He must avoid all exposure to hazards such as unprotected heights, dangerous machinery or climbing ladders, ropes or scaffolds.**

Given Murnane's RFC limitations, the ALJ concluded that he had no past relevant work. (R. 24-28)

At step five, ALJ Friedman ruled that there are jobs—*e.g.*, hand packager, production assembler, and eyeglass polisher—that exist in

---

1   Pages in the administrative record (ECF no. 6) are cited as "R. __."

2   Murnane does not challenge the ALJ's step three seizure finding here.

5

significant numbers in the national economy that Murnane can perform. (R. 28-29)

### D. Analysis

On appeal, Murnane contends that the ALJ's decision lacks substantial evidence. Specifically, Murnane argues that: (1) the ALJ should have found that he had an intellectual disability at step two; (2) the ALJ should have found that his intellectual disability met the requirements of Listing 12.05(D) at step three; and (3) the ALJ failed to consider and credit all of the his subjective complaints. Based on a combination of errors (1)-(3), Murnane also argues that the ALJ's RFC finding is flawed.

#### 1. Intellectual Disability at Step Two

Murnane first argues that the ALJ failed to consider whether he has an intellectual disability at step two. I disagree.

Following a thorough review of the record as a whole, ALJ Friedman concluded that Murnane's mental impairment was a learning disability rather than a cognitive disability. (R. 21-22) That finding, for reasons stated more fully below, is supported by substantial evidence. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360-61 (3d Cir. 2004) (noting that step two findings will be upheld if based on substantial evidence). While it is true that most of ALJ's analysis on this point occurred downstream in the step-wise analysis, I will not require the ALJ to mechanically repeat the same facts and evidence under each topic heading of the opinion where, as here, the ALJ has provided "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.2d at 505.

In any event, any step 2 error is harmless because the ALJ did assess Murnane's mental impairment, however characterized, under the appropriate intellectual disability listing at step three.

### 2. Intellectual Disability under Listing 12.05D

Murnane next contends that ALJ Friedman should have found that his mental impairment met the requirements of Listing 12.05D. Under this listing, a claimant must provide valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following limitations: marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes each of an extended duration. In over two pages of considered analysis, the ALJ summarized the evidence of Murnane's mental impairment and properly concluded that it did not rise to the level of severity required by Listing 12.05(D).

As an initial matter, ALJ Friedman noted that Murnane may not have a valid full scale IQ score below 70. It is true, the ALJ conceded, that Murnane scored a 61 on a 2011 IQ test. But the psychologist who conducted that exam reported that the score did "not present a complete picture of [Murnane's] cognitive ability." (R. 22, 341-42) That score of 61 in 2011, the ALJ also noted, is wedged between a 75, recorded in 2006, and a 71, recorded in October 2013. (R. 22, 340, 398-99) At any rate, the psychologists who administered the 2011 and 2013 tests both agreed that the results were consistent with someone who is learning rather than cognitively disabled. (R. 22, 341-42, 398) More generally, ALJ Friedman acknowledged that Murnane's somewhat disparate scores suggests that his intellectual functioning is most likely borderline to mildly deficient. (R. 22, 28)

ALJ Friedman assumed for purpose of argument that Murnane had a valid full scale IQ score below 70 and proceeded to consider whether his mental impairment presented marked limitations in daily living, social functioning, concentration, persistence or pace, or repeated episodes of decompensation of extended duration. (R. 22-23) In those areas, the ALJ found, Murnane's mental

7

impairment resulted only mild or moderate restrictions in daily living activities, social functioning, or concentration, persistence, or pace.[3]

The ALJ supported that determination with specific findings based on the evidence in the record as a whole. Murnane's daily living activities, the ALJ ruled, included dressing, bathing, brushing his hair, shaving, feeding himself, and using the toilet. With a microwave, Murnane can prepare and cook meals. He cleans his bedroom and bathroom, although he needs reminders. He has a driver's license and can leave his home and shop (though he does so infrequently). His mother stated that he had difficulty managing money, but she also noted that "he has gotten better through the years." (R. 22-23, 172-74, 399)

Concerning Murnane's social functioning, the ALJ noted that teachers described him in school records as "quiet," "cooperative," "polite," "pleasant," and "well-behaved." The consultative examiner, the ALJ noted, found that Murnane has adequate communication skills. Although Murnane's mother reported that he had an easier time socializing with his younger cousins and spends most his day alone on the computer, she also stated that Murnane uses a web cam to talk others. School records also indicate that Murnane "made many new friends" after moving to a New Jersey public school from Pennsylvania. (R. 23, 268, 283-84, 340-45, 351- 52, 397-99)

Although Murnane has a documented learning disability that affects his ability to concentrate and complete tasks, ALJ Friedman noted that his school records indicate that he was "organized," "work[ed] independently," "g[a]ve good effort" and "complete[d] assignments." In his initial application, his mother reported that he is able to recite facts and details about football, his favorite sport. Furthermore, the ALJ noted, Murnane was able to learn how to mix concrete and operate the machinery required to complete that task—a job

---

[3] The ALJ ruled that there was no evidence of any episode of decompensation, let alone one of extended duration. (R. 23)

8

he might have retained had it not been seasonal employment. (R. 23-24, 48, 23, 280-84, 352, 397-99)

In sum, in a balanced ruling, the ALJ found that Murnane's moderate concentration limitation and mild social function and daily living limitations were real, but did not meet the severity required under Listing 12.05(D). I find that the ALJ gave due consideration to all of the evidence, made findings, and gave reasons for them. His determinations are supported by substantial evidence.[4]

### 3. Inadequate Consider of Subjective Complaints

Murnane also argues that the ALJ improperly discounted his (and some of his mother's) complaints about his mental impairments. He also suggests that ALJ Friedman evaluated these complaints based on an assessment of his character and credibility instead of a review of the objective medical evidence in the record. Here, too, I disagree; ALJ Friedman did, as required, weigh all of the evidence regarding Murnane's various symptoms and resulting limitations.

---

[4] Murnane's backup argument is that remand is required in light of a recent change to Listing 12.05, which became effective on January 17, 2017. New Listing 12.05 is not retroactive; it applies to "new applications filed on or after the effective date" and "the prior rules will continue to apply until the effective date of [the new] rules." 81 F.R. 66138, 66139. Murnane filed his claim in March 2012, and the final decision of the Commissioner was issued in August 2015. The Commissioner therefore did not err in applying the then-current 2015 Listing, rather than the 2017 version, even assuming the new listing was then available.

At any rate, it is not at all clear that the new Listing 12.05 would have produced a different result. It relaxed the IQ score requirements slightly, but the ALJ here assumed that Murnane met that requirement. More pertinently, it specifically cites memory-related limitations on the ability to understand, remember, or apply information. Surely such memory-related matters fell under the more general rubric of the old listing, but the new version explicitly elevates them to specific criteria of "extreme" or "marked" limitations of mental functioning. Nevertheless, I think that the ALJ here gave due consideration to such memory-related impairments. *See* Section D.4, *infra*.

A claimant's subjective complaints merit careful consideration, but the ALJ is not required to accept them uncritically. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (citing 20 C.F.R. § 416.929). Rather, the ALJ is required to assess whether and to what degree such complaints are credible. Such credibility determinations are reserved for the ALJ:

> [W]hile an ALJ must consider a claimant's subjective complaints, an ALJ has discretion to evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant. Subjective complaints cannot alone establish disability.

*Gantt v. Comm'r Soc. Sec.*, 205 F. App'x 65, 67 (3d Cir. 2006) (internal quotations and citations omitted). *See also* 20 C.F.R. § 404.1529(c); *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 765 (3d Cir. 2009) (citing *Van Horn v. Schweiker*, 717 F. 2d 871, 873 (3d Cir. 1983)); *Davis v. Com'r of Soc. Sec.*, 240 F. App'x 957, 960 (3d Cir. 2007).

The ALJ may reject subjective complaints, for example, if they are not credible in light of the other evidence of record. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). The ALJ is called upon to evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit her ability to perform basic work activities. *See* 20 C.F.R. § 404.1529(c)(2). As to that issue, "[o]bjective medical evidence . . . is a useful indicator." *Id.* The ALJ may also examine factors that precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 1529(c)(3).

The ALJ's credibility determination "must contain specific reasons for the finding reasons for the weight given to the individual's symptoms" and "be consistent with and supported by the evidence." SSR 16-3; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state her reasons for discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 F. App'x 725, 729 (3d

Cir. 2003). Where that has been done, a reviewing court will defer to the ALJ's credibility determinations.

The ALJ here discharged that obligation. His decision, supported by substantial evidence in the record, represents a classic weighing of the evidence to which this Court must defer. Murnane is correct that his mother stated that he "cannot really do anything by himself, at all." (R.59) It is also true that there is evidence that he has difficulty paying bills, following a simple recipe, and learning new tasks. (R. 48-50, 60-61, 171-177, 398-99) On the other hand, Murnane was able to work as a concrete mixer for six months and, though it may have taken some time, he learned the skills necessary to operate the machines on that job. (R. 49-50) In addition to the concrete mixing job, the ALJ noted, Murnane has also worked labeling and placing packages on a conveyor belt for a retailer, who, at the time of the consultative examination in December 2013, was considering hiring him full-time. (R. 398) There is no evidence of deterioration in Murnane's condition since he held those jobs. And, as noted above, ALJ Friedman considered that Murnane's school records indicated that he was a quiet, industrious student capable of independent work. (R. 340-45, 351- 52, 397-99) Weighing all of this evidence, the ALJ concluded, as he was entitled to do, that Murnane's mental impairment is palpable but not disabling. What the ALJ did not do, as Murnane argues, is disregard his complaints based on an assessment of his character or personality. The ALJ instead properly assessed the credibility of Murnane's complaints based on a searching review of the record as whole. I therefore find no error here.[5]

---

[5] Murnane alternatively seems to suggest the reversal and remand are appropriate because SSR 16-3, which eliminated the term "credibility" from the agency's sub-regulatory policy, was issued after the ALJ made his decision. 2016 SSR Lexis 4 (effective March 28, 2016). Even if this new policy guidance applied here, it would not change the outcome of this case. Under the new guidance, ALJs are still called on to (1) determine whether the individual has a medically determinable impairment that could reasonably expected to produce the individual's alleged symptoms and (2) evaluate the intensity and persistence of an individual's symptoms,

### 4. Residual Functional Capacity

Murnane's argument that the ALJ's RFC determination failed to account for all of his limitations is dependent on contentions that I have already rejected. I therefore need only make only the following point here.

The ALJ concluded that Murnane's mental disorder limited him to simple, routine jobs involving one- to two-step instructions in a low contact setting, requiring no contact with the public and occasional contact with supervisors and co-workers.[6] In addition to the evidence detailed above, these RFC limitations are supported by the opinions of the state agency psychologist, Dr. Joseph Bencivenne, Ph.D., and the consultative examiner, Dr. Marc Friedman, Ph.D., who both concluded that Murnane can understand, remember, and follow simple instructions and carry out simple tasks. (R. 87, 406-407) By no means, then, did the ALJ fail to account for Murnane's memory and concentration difficulties; indeed, ALJ Friedman limited him to employment in low-contact settings because work involving contact "with the general public could evolve into more complex and less routine situations." (R. 28) In sum, the ALJ's residual functional capacity determination took into account what Murnane says it ignored. It is therefore supported by substantial evidence.

---

all based on the evidence in record as a whole—exactly the responsibility with which they were charged under the agency's previous guidance. *Herrold v. Colvin*, Civ. No. 14-1142, 2016 U.S. Dist. LEXIS 55722, at *28-30 (N.D. Ill. April 27, 2016) ("[A] comparison [between SSR 16-3 and the old guidance, SSR 96-7] reveals substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms. . . . Stated differently, 'the agency has had only one position, although it has expressed that position in different words.'") (quoting *First. Nat. Bank of Chicago. V. Standard Bank and Trust*, 172 F.3d 472, 479 (7th Cir. 1999) (internal citations omitted).

[6] Because of Murnane's seizure disorder, the ALJ also ruled out jobs involving unprotected heights, dangerous machinery, or climbing ladders, ropes, or scaffolds. That finding is not challenged on appeal.

## III. CONCLUSION

For the reasons stated above, the ALJ's decision is AFFIRMED.

Dated: February 10, 2017

                                                          _____
                                                          **KEVIN MCNULTY**
                                                          **United States District Judge**

13